IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FLEXLATCH LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | Case No. 23-cv-06296 <br><br> Honorable Andrea R. Wood <br><br> Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT NINGBO YINGLI ELECTRICAL APPLIANCES CO., LTD.'S
MOTION TO MODIFY PRELIMINARY INJUNCTION ORDER**

Defendant Ningbo Yingli Electrical Appliances Co., Ltd. ("Defendant"), through its attorneys, respectfully moves the Court to modify the Preliminary Injunction Order the Court entered on October 11, 2023, pursuant to ¶ 9 of the Order. ECF No. 29 (the "PI Order").

**I.    Introduction**

Plaintiff asserts, in this copyright case[1], that its registered photographs are infringed because portions of the photographs may be found in the instruction pamphlet inside the accused product package. The asserted copyrighted photographs illustrate how the underlying product - a flexible door latch - is used to let cats in and keep dogs out.  The accused instruction pamphlet was included by the manufacturer without Defendant's knowledge or direction. Without conceding the merits of Plaintiff's claims, Defendant is willing to destroy its current inventory, and going forward to only sell the flexible door latch without the accused instruction pamphlet. Because the PI Order prevents all sales of the flexible door latch by Defendant (whether or not

---

[1] Plaintiff also pleads violation of the Illinois Uniform Deceptive Trade Practices Act; the UDTPA claim is based on the same set of alleged acts supporting its copyright infringement claim. ECF No. 1 at ¶¶ 45-48.

the instruction pamphlet at issue is included) and restrains all proceeds of such sales without limitation, Defendant moves the Court to modify the PI Order to allow the sale of a flexible door latch without the accused instruction pamphlet and to allow Defendant reasonable access to the proceeds of those sales.

Defendant's motion should be granted for three reasons. *First*, Plaintiff's allegations of infringement relate solely to the instructions packaged with Defendant's products, which contain the allegedly copyrighted material. As of the date of this motion, Defendant has instructed the platform to destroy all inventory containing any allegedly copyrighted materials and has plans to ship new products without such instructions. Thus, there is no reason to continue enjoining sales of Defendant's products.

*Second*, an unlimited asset restraint is vastly inequitable when compared to the gross profits made by the allegedly infringing sales (less than $21,606.01). In fact, because the alleged copyright infringement occurred only in an instruction manual packaged within the product, the profit on the infringing sales greatly overestimates the actual damages. Further, the allegedly infringing sales began before the registration of the copyright, so statutory damages are not an applicable remedy. Therefore, the Court should cap the amount of assets restrained to $22,000, the maximum approximate rough gross profits on the allegedly infringing sales.

*Third*, the balancing of hardships weighs heavily in Defendant's favor. Modifying the PI Order allows Defendant to continue its lawful business operations without prejudicing Plaintiff's rights to enforce a judgment (if Defendant is ultimately found liable). Enjoining sales of Defendant's lawful products and maintaining an unlimited asset restraint may shut down Defendant's business without any legitimate benefit to Plaintiff.

II. **Background Facts**

  A. **Procedural Background**

  1. Plaintiff filed the Complaint under seal on August 30, 2023. ECF No. 1. Plaintiff filed an *Ex Parte* application to seek a Temporary Restraining Order on September 9, 2023. ECF No. 10. The Court granted the application and issued a TRO on September 13, 2023. ECF No. 16.

  2. Plaintiff filed a motion for a preliminary injunction on October 6, 2023, seeking to convert the TRO to a preliminary injunction. ECF No. 22. The Court entered the PI Order on October 11, 2023. ECF No. 29.

  3. Plaintiff emailed Defendant on October 7, 2023. Declaration of Jiasheng Yang ("Yang Decl.") ¶ 3. This is the first time Defendant received an email from Plaintiff's counsel regarding the lawsuit. *Id*. Defendant engaged outside counsel on or about October 25, 2023. *Id*. ¶ 4. Counsel for Defendant filed a notice of appearance on October 26, 2023. ECF No. 35. Defendant was not able to retain counsel in time to object to the entry of the PI Order.

  B. **Defendant's Amazon Listing and the Allegedly Infringing Materials**

  4. Defendant operates an ecommerce store on Amazon known as Yingli Direct. Yang Decl. ¶ 5. One of Defendant's products is flexible door latch strap for pet owners. *Id.* Defendant does not manufacture products; Defendant sources its products from manufacturers located in China. *Id.* ¶ 6. Those manufacturers fabricate the products and prepare the product packaging. *Id.*

  5. Plaintiff alleges that Defendant engaged in copyright infringement and counterfeiting activities, accusing certain of Defendant's Amazon product listings as infringing on and counterfeiting Plaintiff's federally registered copyright of certain photographs identified in the Complaint. ECF No. 1, ¶¶ 5, 39. Plaintiff's counsel provided partial screenshots of the

3

accused listings as part of their evidence of copyright infringement and counterfeiting. Declaration of Shruti Aggarwal ("Aggarwal Decl.") ¶ 2.

6. The partial screenshots of the accused product listings provided by Plaintiff's counsel do not contain the alleged copyrighted photographs identified in the Complaint. *Id.* Defendant's Amazon product listings have never included the allegedly copyrighted or infringing materials. Yang Decl. ¶ 7. Some of the accused products were shipped with pamphlets containing the allegedly copyrighted material as part of the packaging. *Id.* ¶ 8. These pamphlets were inserted by the manufacturer. *Id.*

7. As of November 24, 2023, Defendant has instructed the warehouse to destroy all existing inventory having pamphlets containing the allegedly copyrighted material. *Id.* ¶ 9. Defendant has instructed the manufacturer to not include the pamphlet going forward. *Id.*

  **C.** **Sales Proceeds, Profits, and Assets Restrained**

8. As stated on the reports generated from Defendant's Amazon Seller Central Account attached as Group Exhibit 1, the combined Amazon "net proceeds" (sales proceeds less amazon.com fees) for the products at issue is $40,025.53. *Id.* ¶ 10.

9. From the Amazon net proceeds, Defendant must pay for the cost of the products. For the sales at issue, this cost is approximately $18,419.52. *Id.* ¶ 11.

10. Subtracting the cost of the products from the Amazon net proceeds yields $21,606.01 in gross profit from selling the allegedly infringing products. *Id*. ¶ 12. This figure does not include additional costs that Defendant must pay, such as advertising fees and overseas shipping costs. *Id.*

**III.** **Argument**

  A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v.*

*Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To obtain a preliminary injunction, a plaintiff has the burden to show that: "(1) without this relief, it will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of prevailing on the merits of its claims." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (internal quotations omitted). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.*

A motion to modify or dissolve an existing preliminary injunction is subject to the same considerations as a motion to grant such relief, and both are subject to the broad discretion of the Court. *See Antsy Labs LLC v. Schedule "A" Defendants*, No. 21 C 3289, 2022 WL 17176498, at *2 (N.D. Ill. Nov. 23, 2022); *see also Centurion Reinsurance Co., Ltd. v. Singer*, 810 F.2d 140, 143 (7th Cir. 1987). Changed circumstances, while they may be relevant to such a motion, have not been held to be necessary. *Antsy Labs*, 2022 WL 17176498, at *2; *see also Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 750-51 (7th Cir. 2015); *cf. Fed. R. Civ. P.* 60(b)(5) (Court may relieve a party from a final judgment when "applying it prospectively is no longer equitable").

Here, changed circumstances exist that justify modifying the PI Order. Specifically, there is no longer an ongoing need to enjoin Defendant's product sales because Defendant no longer includes the allegedly copyrighted material in its product packaging. Furthermore, the balance of hardships favors modification of the PI Order to restrain only an amount of assets commeasurable with profit of Defendant's actual sales of the allegedly infringing products. These reasons alone are sufficient grounds to modify the PI Order.

### A. The PI Order enjoining product sales should be modified because Defendant no longer uses allegedly copyrighted material in its product packaging.

At the outset, the PI Order should be modified to permit non-infringing sales. Because Defendant's new product packaging no longer contains any allegedly copyrighted or infringing materials, there is no reason to continue enjoining sales of Defendant's genuine and non-infringing flexible latch products. Such a modification may not even be strictly necessary, given that the current PI Order only enjoins "using Plaintiff's FlexLatch Copyrights and/or any reproductions, counterfeit copies, or colorable imitations in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine FlexLatch product." ECF No. 29 at ¶1.a. The existing PI Order thus does not enjoin non-infringing sales. Nevertheless, the PI Order as issued has caused Amazon to delist multiple of Defendant's product listings. Yang Decl. ¶ 5. Because Amazon generally does not lift listing restrictions without receiving notice from the Plaintiff and an explicit Court order, a modified PI Order is necessary to enable Defendant to continue to sell its non-infringing products. Accordingly, Defendant respectfully requests that the Court modify the PI Order to explicitly allow sales of Defendant's products when sold without the allegedly infringing copyright photographs and instruct Plaintiff to notify Amazon of this modification.

### B. Additionally, the Court should modify the asset restraint based on evidence of Defendant's profits.

Furthermore, reasonable grounds exist that, at minimum, justify a cap on the amount of financial assets needing restraint. The detailed reasons are as follows:

First, there is no justification to freeze assets in excess of the amount of profits on infringing sales. Courts "generally do not have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 30,

2013). Asset freeze is permitted only to "preserve the equitable remedy of an accounting for profits." *Luxottica Grp. S.p.A. v. Zhiqiang Zhao*, No. 16 C 7988, 2017 WL 1036576, at *7 (N.D. Ill. Mar. 17, 2017) (granting a lift of asset freeze where plaintiff opted to seek statutory damages only). "[I]f the amount of the profits is known, then the asset freeze should apply on[ly] to that specific amount, and no more." *Deckers Outdoor*, 2013 WL 12314399, at *2 ("[T]he appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief."); *see also Antsy Labs*, 2022 WL 17176498, at *4 (quoting *Deckers Outdoor*). As set forth in section II.C above, Defendant made less than $22,000 in gross profit from the allegedly infringing sales. *Supra* at II.C. Accordingly, the asset freeze should be capped at most to this amount.

Second, the amount of profits is not even an applicable remedy here because Defendant's profits cannot be said to have derived from the alleged infringement. *See Young Design Inc. v. Teletronics Intern., Inc.*, Civ. A. No. 00-970-A, 2001 WL 35804500, at *13 (E.D. Va. Jul. 31, 2001); *Imig, Inc. v. Electrolux Home Care Prods., Ltd.*, No. CV 05-0529 (JO), 2008 WL 905898, at *21 (E.D.N.Y. Mar. 31, 2008). In *Young Design*, despite the court's conclusion that defendant Teletronics committed copyright infringement for copying portions of Plaintiff's manual in creating its own product manual, the court held that the plaintiff did *not* sustain actual damages because "it is speculative and unreasonable to find that customers bought the defendant's amplifier because of its manual or that the manual was a significant incentive to any sale." *Young Design, Inc.*, 2001 WL 35804500, at *13. In *Imig*, the court held that profits on the sales of vacuum cleaners were not an appropriate remedy for copyright infringement of the owner's guide for the vacuum cleaners. *Imig*, 2008 WL 905898, at *21. Here, as in *Young Design* and *Imig*, the alleged copyright infringement does not relate to the sales of flexible door latches—it relates to the instruction pamphlet found inside the package. Thus, the gross profit of $21,606.01

7

greatly overestimates the monetary relief to which Plaintiff is entitled (if Plaintiff is entitled to any such relief at all). [2]

*Third*, although statutory damages are not a justification for an asset freeze, statutory damages are not even available here, because Defendant began to sell its flexible door latches with the accused instruction pamphlets in December 2022 and January 2023, several months *before* Plaintiff's copyrights were registered. *See* Group Exhibit 1. Under these circumstances, statutory damages are not permitted. *See* 17 U.S.C. § 412 ("no award of statutory damages or of attorney's fees, …, shall be made for … any infringement of copyright commenced after first publication of the work and before the effective date of its registration….").

---

[2] In addition to the allegedly copyrighted photographs found in the instruction pamphlet, Plaintiff's counsel has forwarded to counsel for Defendant various screenshots of Plaintiff's product listings, which generally show a flexible door latch in use on a door. Aggarwal Decl. ¶ 2; *see also* Exhibit 3. The product listings do *not* contain Plaintiff's allegedly copyrighted photographs (Aggarwal Decl. ¶ 2*)*, but Plaintiff's counsel has referred to the listings as containing "derivative" versions of the photographs. Plaintiff's counsel appears to contend that the images in the accused listings infringe on the asserted copyrighted photographs. There is no basis for such an assertion, given that copyright protection extends only to the expression of ideas, not the underlying ideas or concepts themselves. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work … *extend to any idea*, … , *concept*, … or discovery, *regardless of the form* in which it is described, explained, illustrated, or embodied in such work.") (emphasis added). The copyrighted materials Plaintiff asserts here illustrate the idea behind the flexible door latch concept—controlling the width of a door opening to allow small animals to pass through but not large animals, or to use Plaintiff's own words, a "Door Holder Latch" that "Let's Cat in and Keeps Dogs Out of Litter & Food." *See* ECF No. 1 at ¶ 12 (listing title from "Authentic E-Commerce Examples.") Defendant's rendering of this concept is not substantially similar to how it is rendered in the asserted copyrighted materials, and thus these listings cannot be copyright infringement. For example, one of Defendant's listing images shows both a cat and a dog in the same photo – the cat is inside the door, but the dog is kept out. *See* Exhibit 3 at 2. The copyrighted photos expressed the concept in two separate photos – the cat is in one image, and the dog is in a different image. ECF No. 1 at 3. *Cf. Kaplan v. Stock Market Photo Agency, Inc.*, 133 F. Supp. 2d 317, 323-24 (S.D.N.Y. 2001) (comparing photos and finding them to lack substantial similarity because "nearly all the similarity between the works arise from the unprotectable concept of a businessman contemplating a leap from a city building).

For all these reasons, Defendant respectfully requests that the Court modify the PI Order by reducing the asset restraint to a maximum amount of $22,000.

### C. The balancing of hardships favors dissolving or modifying the PI Order.

Finally, the hardship to Defendant imposed by the PI Order outweighs any potential hardship to Plaintiff. A court may deny entry of a preliminary injunction if the balancing of harms weighs against it, even if all other elements for a preliminary injunction are satisfied. *See Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 789 (7th Cir. 2011). Furthermore, "[t]his balancing process involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays*, 974 F.3d at 818.

Here, an unlimited asset restraint would prevent Defendant from continuing its business as all assets from future and legitimate sales will be locked up. In contrast, an unlimited asset restraint serves no legitimate interest of Plaintiff's. Moreover, maintaining the injunction against Defendant's lawful sales and an unlimited asset restraint disincentivizes Plaintiff from quickly resolving this low-damage-value dispute. Defendant no longer sells the product that includes the allegedly copyrighted materials in its packaging. The PI Order therefore should be modified for the additional reason that the balance of harms strongly weighs in favor of modifying it.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that the Court modify the preliminary injunction order to clarify that Defendant is not enjoined from selling its legitimate, non-infringing products and to reduce the asset restraint to cap the maximum amount restrained to be $22,000 or less.

Dated: November 27, 2023                      Respectfully Submitted,

                                                     **NINGBO YINGLI ELECTRICAL APPLIANCES CO., LTD.**

9

                                                  By: /s/ Daniel I. Konieczny
                                                            One of Its Attorneys

| | |
|---|---|
| Hua Chen | Daniel I. Konieczny (#6275293) |
| SCIENBIZIP, P.C. | TABET DIVITO & ROTHSTEIN LLC |
| 550 S. Hope Street, Suite 2825 | 209 S. LaSalle St., 7th Floor |
| Los Angeles, California 90071 | Chicago, IL 60604 |
| Telephone: (213) 426-1771 | Telephone: (312) 762-9450 |
| | Facsimile: (312) 762-9451 |
| | dkonieczny@tdrlaw.com |
| | huachen@scienbizippc.com |